It's irregular, but if you don't wish to make an opening statement, I'm not sure that we have to, that we can compel you to do so. But ordinarily, on reply, you have to, you know, it seems a little irregular. You've got 10 minutes. You can use as little of the time as you wish and then sit down. But the court may have some questions for you. I understand. Then what I'll do is I'll just make my argument at this point, and I will leave one minute for rebuttal. Okay. Watch your time. Okay. If it pleases the court, Your Honor, my name is Frankie Adamo. I have a little bit of a horse throat. I think it's the fire. But I'll try to keep that down. This is my first time before the Court of Appeals, so I hope I do well. So excuse my nervousness. I hope I just don't blank out. But I want to say that I briefed it completely. So I'm going to defer to those briefs. I gave all of the facts and the specific information in my briefs as far as this case is concerned, and especially the reply brief, because I had a chance to see what the Respondent was arguing against. And I put good information there. However, I want to discuss something about the standard that the Court is using and how it is applied. Because we work down at the ALJ level. That's where I work. I've had this case since it was before the ALJ. And the standard I'm talking about, there are two standards. And in my particular case, we have a doctor that I think should have been credited more weight. Is that Dr. Patel? That's correct. Then what the ALJ did. The ALJ gave, I think he used the word significant weight to Dr. Handel, and those are the State Agency examiners, and Dr. Levison, which is an examining physician, but a consultative examiner, and then we have Dr. McVie. Now, Dr. McVie, I tend to agree with that, or I find that that opinion is, that medical opinion is in line and consistent. But as far as Dr. Levison, I mean, Dr. Levison, he, there's a letter actually in the record that I submitted that said Ms. Hennessey had a problem with Dr. Levison. And his use of Well, apparently Dr. Levison had a problem with her, too. You got that as well. You could see by his opinion. So Well, don't misunderstand me. He felt that she was not really cooperating when he asked her to perform certain functions. Isn't that right? That's what he felt, but Ms. But don't we have, that's a professional medical opinion. Don't we have to give it some credibility? Oh, absolutely, because yes, he's a doctor, and I cannot reasonably object to that or say deny, because he is a professional. But when you read Ms. Hennessey's, that's a contemporaneous letter, she said that he made her do things that was very difficult for her and actually brought her to tears. Now, also, Dr. Levison, although he said he reviewed the record, we don't know that. He only saw her for 10 minutes, and also he never saw her again. What you're saying is the six doctors, as I count them, six doctors are on the other side of the case. You have one doctor, but your doctor's opinion is better than all the others? Yes, I'll tell you why. That opinion is, and I'll tell you, I avert here that it is, that that point of those, that opinion is uncontroverted. And that's my, that's where I'm going to lead in with that. You see, this is the, the standard is, and believe it or not, I got this from the social security outline that's on the Court's website, and it's pages 23 and 24, and the Court very well, and I, you know, I'm not criticizing the Court. I think the Court has, the law is clear to the Court. What I'm saying is I think the law is not being applied as the, as we, as the Secretary intends and as the Court intends. And it says here to reject a controverted, oh, I'm sorry, that to, if you have an uncontroverted opinion, as we all know, you need clear and convincing evidence. But when is a medical opinion not controverted? I, I say to you, Your Honors, today that all, most of these medical opinions, no matter what they are, they all have some difference of opinion. There's all some, I would say most of them are controverted. So I don't think we, I've never seen a clear and convincing description, and I've, and I've done hundreds of social security cases. Counsel, can I get some clarification? So Dr. Patel was her pain management doctor? Correct. Is that right? And he wasn't treating her for anything else. Is that correct? Well, I think his office was treating her for the incontency, incontency, and perhaps some other. Because she had a, she had a personal physician. Was that Dr. Reynolds? I think it was Dr. LaPrada. Now, that. That's somebody that she was seeing about, that she would see maybe once a year. Yes. That was, that was Reynolds. I think Reynolds she saw once a year. I think it was a neurologist or something like that. Dr. Reynolds was. Okay. And he, and he doesn't weigh in with any opinions here. Is that correct? No, he just, he just provided a record, you know, a report, and that was it. It was nothing. I think it was dealing with, I'm not sure. I wish I could remember. I think Dr. Reynolds was a neuro, neuro, or neurologist type of person. And Dr. LaPrada was her family physician. But see, this is the thing that you have to remember is that though she was on a worker's comp and she was paying cash, that's Mrs. Hennessey, and she could not afford those other doctors, so she had to rely on Dr. Patel more because he was covered by her worker's comp agreement. All right. Counsel, what's bothering me about Dr. Patel is that there seems to be inconsistencies. He said that Mrs. Hennessey could sit for 30 minutes at a time, but then wrote she had to walk every five minutes. Oh, that, as I wrote in my brief, see, I think Dr. Patel misunderstood that form. I don't think that's what he intended there because, you know what, that doesn't make, that didn't make sense to me either. And I think he just. But if it doesn't make any sense and that's what we have in the record, then how do we credit it? Oh, I'll tell you. Because, you see, what is uncontradicted is, now Dr. Patel is a pain management physician. His expertise and specialty is medication and epidurals pain management. Okay. So at the bottom of that, I'm sorry, Your Honor, what was your name? This is Judge O'Scanlan. Judge O'Scanlan. Judge O'Scanlan said, was referring to a record that Dr. Patel filled out that at the bottom, at the lower pages, he was talking about her pain medication and how the pain medication disabled her. It caused her to be, it would cause her to be absent more than three times a month. It would cause her to be drowsy. It would cause her to be, I can't remember the other things that he said, but basically those were disabling conditions. No one else talked about that anywhere in the record. No one talked about how those particular factors, which in and of themselves are disabling. Okay. Counsel, these kinds of forms are, I'll say they're not terribly helpful, these ones where we just check boxes. And if once you admit that he misunderstood a question and that he gave something that probably is not accurate and that he didn't intend, where does that stop? How do we credit him once you admit that Dr. Patel made a mistake in the way that he filled out the form? Well, because I believe that that little error is not, that's a harmless error, that anyone can see that that is just where he didn't mean somebody walking by, you can see that he didn't intend that. It wasn't an error like that, I feel. Counsel, you have a minute and a half left. Would you like to reserve that? Yes. I'll do that. Thank you. Good morning, Your Honors. Catherine Miller on behalf of the Commissioner of Social Security. This is a case where the ALJ applied the appropriate methodology for weighing medical opinion evidence. He also provided multiple clear and convincing reasons for giving reduced weight to the appellant's credibility. Because the overall decision is firmly anchored by substantial evidence and legally sufficient reasoning, we request affirmance. The ALJ provided multiple specific and legitimate reasons for giving reduced weight to appellant's treating pain management specialist, Dr. Patel. It found the July 2013 opinion from this doctor was inconsistent with his own treating and progress notes. And as you pointed out, in July 2013, Dr. Patel said that the appellant can sit for a certain period of time, but they must walk for five minutes every five minutes. Whereas in October 2011, Dr. Patel found that she could walk for 45 minutes. That's two years later, right, or almost two years later? That is correct. That doesn't seem unusual that a doctor might say, well, that was then and this is now. I would agree with that. However, on this record, what we have is Dr. Patel's clinical findings throughout all of his treatment notes are exactly the same. So it doesn't account for this inconsistency. He consistently shows that there's some right leg reduced strength in the right leg. Is Dr. Patel under an obligation to explain a change in diagnosis or a change in assessment? Could you repeat that question? Yeah. Is Dr. Patel obligated to explain a change, particularly over a two-year period? Well, he's not necessarily obligated to explain, but if he's going to provide a medical opinion, we want to see some clinical findings. It sure would have been helpful if he had done so. Sure. Whose form is this? This was a form that was provided by a claimant's attorney. Right. This form that's at ER 341, that was prepared by the – this is not a doctor's form? Are you talking about the physical capacities questionnaire? No, this one that says medical opinion, Ray, Maryland, Hennessy, ability to do work-related activities to Social Security Administration, name, Social Security number, and so forth, and then different responses to basically circles of various options. Right. It doesn't look like a form that would be prepared by this attorney. I mean, it just doesn't make sense to me. I'm sorry if I apologize for the confusion. I would not – the attorney did not fill out the form. Dr. Patel did. No, no. Who prepared the form? Who created the form? Are we looking at the same form? Are we looking at Dr. Patel's form? I'm looking at page ER 341. It's the medical opinion. It's the fill out the form. This is the one where we have the five minutes, every five minutes. I see. I see. I have a question to you. I want to make sure now that we've got the right answer. So I think I asked you whether – who prepared this form. I mean, who created the form? Who created the form. And your answer was counsel. Right. For Ms. Hennessy. Yes. This was his form provided to the doctor, which Dr. Patel then filled out. Right. Isn't this rather unusual that the lawyer would come up with the very detailed forms giving the doctor various options, 100 pounds, 50, 20, 10, less than 10? I don't think it's that unusual, actually, at the administrative level. I think these forms are prepared all the time by a plaintiff's counsel. Really? All right. As to this inconsistency that's unexplained, also we have some interim treating notes from Dr. Patel that are from December 2011, February 2012, December 2012, where Ms. Hennessy is indicating that her pain medications are working quite well and she's had improvements. So given these unexplained differences, the ALJ reasonably concluded that Dr. Patel appeared to rely to a large degree on the appellant's less than reliable subjective reports. Also, as you noted earlier, Dr. Patel's opinion was contradicted by opinions from five other doctors. And that was Drs. McLean, McPhee, Levison, Robinson, Handel. And all these doctors found that she could do at least sedentary work. There were three examining physicians who provided independent clinical findings based on their own examinations, which is substantial evidence under cases such as reexamining physicians' findings, and then made their own interpretations. And those are also independent clinical findings under ORN. Dr. Patel's July 2013 opinion was also inconsistent with the objective medical tests. Right after her injury, Ms. Hennessy did have some abnormalities on imaging, but post-surgery she had no recurrent disc herniation, no stenosis. And she was diagnosed with a post-laminectomy syndrome, which is a failed back syndrome. And the pathology associated with that condition is recurrent disc herniation, stenosis. So there were none of these findings. And, in fact, her treating neurosurgeon, Dr. Leprade, released her to work January 2011 and then found no abnormalities on imaging. The ALJ cites the fact that she looked for work, I think it was about 2010. Right. She says she was only looking for part-time work, and she says it was just too painful to do. But the ALJ uses this against her by saying, well, you're capable of working because you were looking for a job. But if she was only looking for a part-time job, that doesn't mean that she's capable of doing full-time work. And if she says, and it was just too painful, I couldn't do it, that would seem to be an explanation, wouldn't it? Right. Well, the ALJ did find that the fact that she applied for work indicated or suggested that she believed she was capable of some kind of work, and it was part-time work. It was also work that was at the light level. And I recognize that cases such as Carmichael do find, at least in the unemployment context, that looking for part-time work is not necessarily a clear convincing factor. However, I would point out the ALJ provided multiple findings or reasons to give reduced weight to the appellant's credibility. So even if that were an erroneous factor, we have multiple factors supporting the credibility finding. Counsel, you heard your opposing counsel tell us that Dr. Levison's examination was only 10 minutes, and he doubts he read the record. Do you have any response to that? This is the opinion which suggested malingering. Right. I do. There was an objection below at the hearing level only to the weight, not the admissibility, of that particular piece of evidence. There was some allegations of bias, but I think that that was for appellant's counsel to argue or plaintiff's counsel below. Two, the ALJ did not hold it against the appellant that there was this finding. The ALJ could have found there was malingering or evidence of malingering in the record and not have gone through all these other credibility factors. In fact, the ALJ says there's some sort of maybe there's unintentional exaggeration, but he didn't seem to give a lot of weight to that. And three, we just have the record that we have, and the ALJ heard arguments from counsel and weighed the evidence appropriately. In any event, the ALJ did not rely on the malingering in his determination. No. Very well. Not at all. And I'd just like to make a couple of points. Limiting an appellant or a claimant to less than sedentary work sounds like a very, very restricted range, and it's very close to finding them almost disabled. But I want to emphasize that the ALJ in this case wasn't saying she couldn't do sedentary work, but just less than based on postural and environmental limitations. And our regulations say and the VE said those kinds of limitations do not erode the occupational sedentary base, which under our regulations administratively notices 200 occupations. I'd also like to point out that if this court is considering remanding or any of the credit is true, there's no VE testimony in this case that posed the alternative hypothetical based on Dr. Patel's assessed limitations, so we simply don't have that evidence. Okay. Thank you. Thank you, counsel. Mr. Adamo, you've got time remaining. Excuse me. Okay. First, before I run out of time, the thing I wanted the court to hear about that I'm worried about this, I feel as though the specific and legitimate standard has gotten granular since it was introduced, I think, in Valentine a while ago, almost 30 years ago this standard was introduced. And, see, some of the things that the respondent was talking about, it calls for this. Like, for example, with Dr. La Prada released the claimant for work, but if you look in the record this wasn't mentioned by the ALJ, that was later really redacted, not redacted in the sense of the word redacted, but it was later found that she was getting worse, that that was only a temporary resolve and then it started getting worse. And that, again, that's not mentioned and that's not identified. And so when we talk about substantial evidence, substantial evidence that ALJ, when a specific and legitimate standard, he could find, he or she could find specific and legitimate evidence or reasons based on substantial evidence, but he could also ignore some other substantial evidence that goes against that. Ten seconds. Okay. These didn't consider the medication. All of those others medical records that they did not consider the fact that the medication, the lower part of the form. Okay. Do you have any questions? I don't think so. Thank you, counsel. Okay. Thank you. We thank counsel for the argument. Hennessey v. Berryhill will be submitted.
judges: O'scannlain, Bybee, Mahan